993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Omega F. MADISON, Administratrix of the Estate of Seddie
Wiley Madison, Plaintiff-Appellee,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant-Appellant,
and
Jacquelyn ROBINSON; Ervan Pearson, Defendants.
 No. 92-2288.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 30, 1993
Decided: May 4, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-92-74-A)
 Argued: Gerard J. Stief, Associate General Counsel, Washington Metropolitan Area Transit Authority, Washington, D.C., for Appellant.
 Marc Fiedler, Koonz, McKenney, Johnson & Depaolis, P.C., Falls Church, Virginia, for Appellee.
 On Brief: Robert L. Polk, General Counsel, Robert J. Kniaz, Deputy General Counsel, Arnold I. Melnick, Deputy General Counsel, Nancy F. Langworthy, Assistant General Counsel, Fredric H. Schuster, Janet Rubin Landesberg, Jeffrey P. Russell, Washington Metropolitan Area Transit Authority, Washington, D.C., for Appellant.
 Peter C. DePaolis, Karen A. Crist, Koonz, McKenney, Johnson & Depaolis, P.C., Falls Church, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The Washington Metropolitan Area Transit Authority ("WMATA") brings this appeal from a judgment entered on a jury verdict in favor of Omega F. Madison and from the district court's denial of WMATA's motions for judgment as a matter of law and for new trial. Finding no error in the rulings of the district court, we affirm.
 
 
 2
 Omega Madison is the widow of Seddie Wiley Madison, who was killed in an accident involving a Metrorail subway train operated by WMATA.[1] Just before 3:00 p.m. on July 19, 1990, Mr. Madison, who was legally blind, left his work and, following his daily routine, went to the Court House Metrorail station in Arlington, Virginia, seeking to board a train to return to his home. A train operated by WMATA employee Jacquelyn Robinson stopped at the station and passengers began to board and deboard. At this point Mr. Madison somehow fell from the subway platform into the track bed between the fifth and sixth cars of this train.[2] Several individuals crowded to the white granite strip along the edge of the platform and attempted to pull Mr. Madison out of the track bed as he stood with his upper body leaning over the platform edge. J.A. at 108-11. As his predicament became generally apparent, as many as ten to fifteen bystanders began waving their arms and screaming, trying to get the attention of the train operator. Id. at 113-14, 135-36, 153. Robinson stood in her cab in the first car with her head out of the window, looking back along the length of the train, checking to ensure that the train doors and the granite strip remained clear. Several passengers dashed toward the front of the train, yelling frantically to Robinson to hold the doors and stop the train. Id. at 137, 218. The commotion intensified as the train's chimes sounded, indicating that the doors would soon shut. Although she kept her head out of the window until she had actually closed the doors, Robinson remained oblivious to the uproar and to Mr. Madison's danger. Bystanders were unable to extricate Mr. Madison from the track bed in time, and the train struck and killed him as it pulled away from the station.
 
 
 3
 Acting as the administratrix of her husband's estate, Mrs. Madison filed a negligence action against WMATA in the Circuit Court for Arlington County, Virginia, on July 19, 1991, alleging that appellant's employees were negligent in failing to keep an effective lookout for Mr. Madison after he fell into the track bed and in failing to take reasonable actions to prevent his death after being put on notice of his danger by the commotion on the subway platform. Pursuant to section 81 of the WMATA Compact, appellant removed this action to federal district court.[3]
 
 
 4
 At the conclusion of a two day trial, the district court instructed the jury, over WMATA's objections, that the decedent was a passenger of WMATA, a common carrier, so that appellant owed him a duty of "the highest degree of practical care and human foresight in everything that concerns his, the passenger's, safety." Id. at 556. The court also told the jury that Mr. Madison "was what is known as an invitee upon [WMATA's] property," so that appellant's employees had the legal duty "to exercise ordinary and reasonable care to keep an effective lookout for persons who might be in a place of danger from the trains." Id. at 557. The jury was instructed that "[a]n effective lookout means not only looking but looking at a point where looking would be effective, to see what is there to be seen, and to take the reasonably prudent action to avoid the danger that a reasonable lookout or effective lookout would provide." Id. When instructing the jury that the decedent was a passenger and an invitee of WMATA, the court did not distinguish between the time when Mr. Madison was on the platform and the time after he had fallen into the track bed. Finally, the court gave the jury a last clear chance instruction. Id. at 559-60.
 
 
 5
 The jury found WMATA negligent and returned a verdict in favor of Mrs. Madison in the amount of $555,753.77, apportioned between her and Mr. Madison's two children. The district court entered judgment on the verdict and denied WMATA's several motions for judgment as a matter of law and for new trial. This appeal followed.
 
 
 6
 WMATA's principal contention is that the district court erred in instructing the jury that Mr. Madison remained a passenger and an invitee even after he fell into the track bed. In appellant's view, Mr. Madison lost his status as a passenger/invitee and became a trespasser when he entered the track bed without authorization, and therefore he was due only the duty of care owed to a trespasser. Under that standard, claims WMATA, particularly given that the possibility that an individual might fall between two subway cars was not reasonably foreseeable, WMATA is entitled to judgment as a matter of Virginia law, or at the very least, to a new trial at which the jury may be properly instructed as to appellant's duties. WMATA also argues that the last clear chance instruction was erroneously given because the doctrine should not apply in this case.
 
 
 7
 We have read the briefs, heard oral argument, and given thorough consideration to WMATA's contentions. Our review of the applicable Virginia case law leads us to conclude, however, that the questions of foreseeability, effective lookout, and WMATA's negligence were properly left to the jury and that, under the peculiar circumstances here involved, the district court's jury instructions were not erroneous.[4] The judgment of the district court and its denial of WMATA's motions for judgment as a matter of law and for new trial accordingly are affirmed.
 
 AFFIRMED
 
 
 [1]
 "WMATA is an interstate compact agency and instrumentality of Virginia, Maryland, and the District of Columbia, created by the Signatories to the WMATA Compact, as approved by Congress, to provide a regional system of transportation for the Washington, D.C. metropolitan area." Appellant's Br. at 5. The full text of the Compact may be found at Md. Transp. Code Ann. § 10-204; see also Va. Code Ann. §§ 56-529, 56-530; D.C. Code Ann. § 1-2431. Among its functions, WMATA operates the Metrorail rapid transit system
 
 
 [2]
 Although the precise cause of Mr. Madison's fall is unknown, it appears to have been accidental. There is no indication that he intentionally jumped into the track bed or that he was pushed
 
 
 [3]
 Under § 80 of the Compact, Virginia law governed the lawsuit since the accident occurred in the Commonwealth
 
 
 [4]
 We also hold that the court below did not abuse its discretion by refusing to admit testimony proffered by appellant concerning the decedent's alleged habitual hurriedness when using the Metrorail system and regarding the door closure procedures of rapid transit systems other than Metrorail